Good morning, Your Honors. Edmund Nasirzadeh on behalf of Janet Fuladian, the defendant and the appellant. Your Honors, we are dealing with a rather unusual set of facts specifically for California Courts, which is a cooperative. The issue in a cooperative is that the security of the bank is, we'll take one step back, in a cooperative the only thing that the owner of the unit has an interest in is a lease between the fee simple owner, which is in this case Ocean Towers, and the owner of the unit becomes the tenant of Ocean Towers, and in addition to that lease there is a stock certificate issued by the corporation, in which point, in our case, the defendant went out and obtained a loan. That loan was only secured by the lease and the stock certificate. You're not contending in this case, are you, that the anti-deficiency rule applies? We do. That's nowhere in your briefs, is it? We do believe that the defendant should have mitigated its damages. Right, that's a separate question. California has, as most Western states do, a rule that if you have a loan secured by an interest in residential property that you must proceed only against the security and not against the borrower, but you're not contending that statute applies in this case, are you? We do contend, and that leads me to my... Well, where is that in your briefs? We have argued... I don't find any citation to the statute in your briefs. Is it in your briefs? I believe it is, Your Honor. Can you please give the charges a citation? There is a citation of 720... California Civil Code 726... That's the one-action rule? Correct. That's not the anti-deficiency statute, which is, and I'll give you the citation to it in a second, but you're only relying on the one-action rule, are you not? Correct. Not on the anti-deficiency statute? Correct, Your Honor. Okay, that's all I was asking. Yes, thank you. Well, leading up to that issue is, after the defendant failed to pay their loan payments, and they also failed to pay their lease payments, which are essentially their HOA payments to Ocean Towers, Ocean Towers brought an unlawful detainer, which ended in terminating the lease. The one issue, I think, that leads into the problem with the one-action rule is, after the lease was terminated by the unlawful detainer judgment, what happened with the stock certificate? There's no case law in California deciding that We think that if the stock certificate hasn't been terminated yet, the bank still has its security, which means that they should have brought an action for a judicial foreclosure and obtained whatever value there was in the stock, and a deficiency being the balance, or in a way, it agreement says there's no obligation to cure. You agree? Yes, I do understand that, Your Honor, but there's sitting... The second issue that arises, even if we argue that the stock certificate was already terminated, or it was terminated along with the lease, the second problem we face is that Ocean Towers never had a lien against this property. Ocean Towers, which is the fee-simple owner of the property, only had a lease as a landlord, and U.S. Bank is arguing that they're a sold-out junior lien holder. Well, where's the first mortgage? How were they foreclosed upon? They've actually never been foreclosed upon. The property has never been foreclosed upon. The only thing that has taken place is an unlawful detainer action. They say they're analogous to a junior lien holder. They don't claim to be a junior lien holder in a technical sense. Well, I understand, but they've lost their security interest not because of a senior lien holder, Your Honor. I do understand their argument, but this is, again, because this is such a rare set of facts, and no court has dealt with this issue, at least in California. Did you agree that they lost their security because of your client's default? They did lose the security in the lease, Your Honor. That's correct. Well, whatever security they had, they lost because your client defaulted on her obligations, correct? Well, that issue has not been decided, Your Honor, in this court or any other. Well, no, I'm not asking whether the issue's been decided. I'm just asking as a matter of fact, isn't it true that the bank lost its security because your client failed to perform her obligations? That's correct, Your Honor. So, if that's true, then why don't the cases under the anti-deficiency statute, which talk about the plaintiff being by the defendant, why don't those cases apply? They do, Your Honor, and it's not in our brief, and you're correct. That argument is not, the anti-deficiency argument is not in our brief. No, I'm not talking about the anti-deficiency. I'm talking about the one-action statute. There's lots of cases under the one-action statute that say the creditor is relieved of its obligations to pursue the security under the one-action statute when the detour, when detour's actions make it impossible to pursue the security. So, why don't those cases apply here? Well, it doesn't make it impossible, Your Honor. The fact of the matter is that in this case, U.S. Bank could have, in fact, foreclosed on their security way before unlawful detainment took place. They were notified by Ocean Towers, and they don't dispute receiving notice of the fact that the debtor was behind on their lease payments to Ocean Towers. U.S. Bank decided they're not going to do anything about it. They should have, in your view, they should have foreclosed before the unlawful detainer. Yes, Your Honor. Well, they had actually started the foreclosure process because the defendant, in this case, stopped making their mortgage payments first, and thereafter stopped making the HOA payments. And therefore, the foreclosure process had already started way before they even received notice that the borrower is behind in their HOA payments. And once they received notice, they sat back and did absolutely nothing. They were damaged, Your Honor, at the time that the defendant breached the promissory note. And I believe that they would have an obligation to mitigate their damages at that point. But there's no obligation in the loan documents. You're just saying as a general rule? Correct, Your Honor. And what California case do you cite for the proposition that a lender has the general rule to go out and foreclose early? Well, there's no relieve them of that obligation. That's correct. But there is plenty of law, general principle, of mitigating your damages on a breach of contract, Your Honor. You think that overrides the language in the contract? It doesn't. It's not in conflict with the contract. Just because the contract says that they don't have an obligation doesn't mean that they shouldn't. But here's my difficulty. You said at the beginning, this is a strange situation. Had the bank foreclosed on your client's interest, what would it have had? It would have obtained an interest in the lease. Then it would have had to pay the lease, would it not, in order to keep that interest alive? It would have to pay the monthly payments under the lease. And isn't that what the contract says it's not required to do? That's correct. But at the same time, it could have secured its debt, essentially, which is what the whole contract was for. It could have secured its debt by paying money. Well, it's a question of, will you pay $19,000, which was the HOA payment, in order to save a million and a half dollars? Well, who knows how many months they would have had to pay? I assume there was back rent as well. That's correct. But that issue would arise if this was a condominium as well, Your Honor. If a bank would have foreclosed, which they often do on a condominium project, they would have had to pay the HOA fees, which is the same as the lease payments in this case, until the property is sold. Or they may have actually been paid in full at an auction, at a foreclosure sale. They wouldn't necessarily have to continue to pay the lease payments. All right, counsel, your time is up. Thank you. Thank you, Your Honors. Good morning, Your Honors. Charles McKenna for the Plaintiff. I want to say that I own a co-op in Brooklyn. I'm sorry? I own a co-op in Brooklyn. This is not peculiar to California. Yes. Isn't it more common in New York than in California? Yes, they are much more common back east. Good morning, Your Honors. Charles McKenna, as I said, for the Plaintiff and Appellee, U.S. Bank as Trustee. As counsel, for the defendant misflawed and acknowledged, the loan was secured by a lease. It's very common for a leasehold interest to be a security for a loan. The general rule was established long ago in the Glendale federal case that a leasehold interest can be the security for the loan, but when the leasehold interest is terminated, that extinguishes the security for the loan. Can you respond to counsel's argument, if I could rephrase it maybe a little bit for him? He says, look, you knew for a long time that my client was in default and you could have just at that point foreclosed and she wouldn't have been personally liable because the condo was worth the amount of the loan. I'm just assuming that's your argument, but you didn't do that. You just stood by and let the foreclosure occur. Sure. What's the consequence of those facts? The consequence, we're facing the consequence. We have a $2 million judgment that we'll probably never see a penny on. We're facing that consequence. You would have rather foreclosed on the security, I take it? Me personally? The bank. Your Honor, there are a detailed factual history. There was initially dispute over whether notice was properly supplied on default. I mean, that's all water under the bridge. We concede that's water under the bridge. But what we have here is twofold. There's the legal issue where Ms. Flodian is advocating a position that is nowhere in the law for the first time, essentially from thin air, claiming that a sold out junior interest cannot secure payment after the loan, after the security has been extinguished. In the lease, you don't have a junior interest. I take it you've got a senior interest, right? No. Most often, you're junior. In the leasehold scenario, you are still junior to the lessor. Does the lessor have a lien? Sure. For the same reasons we've been talking about here. It's usually, for example, common which can be assessed against the leaseholders. We see it all the time. All the time. Homeowners associations will foreclose on somebody who is behind on HOA dues, common area dues, and whatnot. It's not a unique scenario. The briefs don't deal with this. What's the priority of that kind of lien? In other words, if somebody, let's assume the bank, as in your case, has a recorded interest, a UCC, against the real property interest, and the cooperative has its lien, which one has a priority? Well, that can't be answered in the abstract. A lot of times, there's agreements where they will allow one or another to be in a higher position, especially in the HOA context. It can vary by position sometimes depending on the scope of the specific project we're talking about. A lender won't lend unless they're allowed senior position. That can vary depending on the scenario. But it's undisputed here that the position of our loan was secondary to the lessor, the lessor's interest. It's Hornbrook Law under the Glendale Fed case that a senior lessor forecloses, you've lost your security. And that's why this is no different than the traditional context of a sold-out junior losing its security and being able to go after the note. Not only as a matter of law does that follow, but the express contractual provisions. And it appears, Ms. Flodding's arguing that we shouldn't have done this or we should have done that. The law is clear. The case is cited in our brief. It's not for the other party to question the business decisions made under a contractual right of whether or not to step into the shoes of a defaulted person in Ms. Flodding's position. That would require, assuming we foreclosed, we'd have to step in, we'd have to pay the default amount, we'd then have to keep paying her monthly dues. And there's nothing in the law that says, well, you know, in this situation maybe you should, in that situation maybe you shouldn't. I mean, where would that line ever be drawn? And the fact remains that in this particular situation, we have someone who obviously was defaulting in a myriad of contexts. And to allow, it's nonsensical to allow someone who's defaulting to her landlord and to the bank to escape responsibility. And that's what the Wozab case discusses, where the inequity and the illogical result that would follow from someone in that position being able to avoid responsibility. She got the funds. Not only did she get the funds, it was a cash-out refi. She pocketed over a half million dollars. Do you also have an action against Ocean Towers Housing Corporation? There is other, there has been other litigation concerning this entire building. It's outside the scope of what we're here for today. To put it diplomatically, the defaults to the building resulting in this type of scenario are a bit suspicious. And this wasn't the only unit where that occurred. The other litigation contends that in some way the co-op owners, the co-op owners were in cahoots with the building. Your Honor, I'm not... That's what the litigation contends. That's a matter of public record. Yeah, but my firm's not... Whether it's true or not, we don't, I don't know. My firm's not counsel in that case. I can't speak for where the pleadings are in that regard. But that case is also on behalf of U.S. Bank or U.S. Bank and other banks? I don't know the current status. There was a prior proceeding involving U.S. Bank with, I believe, other loans involved in that building, but I really can't speak for that as my firm is not, was not counsel in that particular matter. I don't even know if it's still ongoing. But you don't rely on that in this case? No, not at all. I don't think that has anything to do with what we're here for today. I think the district court's ruling that entered the judgment in favor of U.S. Bank against Ms. Fallotian is correct in all regards. Can I ask you, you said you don't expect to collect any of this money. Somebody cares. Somebody cares about this. Yes. Isn't it possible to settle this case? If you don't expect to get your $2 million and they obviously have an interest in not having you had a judgment against them since they've hired a lawyer and they filed briefs, isn't a settlement of this case possible? I would hope so. We're always more than willing to discuss settlement. We'll see. But it's, we've explored, we've been trying to discuss assets and whatnot with Ms. Fallotian, but have yet to been able to get a judgment debtors exam. But that's, again, that's, you know, we're open to speaking with counsel and he and I have a fine relationship. That's really not an issue. But in the big... You like to have an affirmed judgment before you speak to them. Would help. Cash? Yes. Other than that, I think we could stand on the briefs from, well, I'm almost out of time anyway. So with that, unless the panel has any further questions. Does anybody have any further questions? No. All right. Thank you. Thank you very much, counsel. U.S. Bank v. Fallotian will be sitting...
judges: Wardlaw, Hurwitz, Korman